UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Ryan Six,** Plaintiff, | No. 22-cv-00203-PHX-MTL |
| vs. | |
| **IQ Data, Incorporated,** Defendant. | Phoenix, Arizona<br>September 21, 2022<br>1:01 p.m. |

**BEFORE: THE HONORABLE MICHAEL T. LIBURDI, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**DISCOVERY DISPUTE HEARING**

Official Court Reporter:
Cathy J. Taylor, RMR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiff:
THOMPSON CONSUMER LAW GROUP, PC
By: **Mr. Russell S. Thompson, IV, Esq.**
11445 East Via Linda, Suite 2-492
Scottsdale, Arizona 85259

For the Defendant:
CARPENTER HAZLEWOOD DELGADO & BOLEN, PLC
By: **Ms. Ember Ann Van Vranken, Esq.**
**Ms. Erin Elizabeth McManis, Esq.**
1400 East Southern Avenue, Suite 400
Tempe, Arizona 85282

**P R O C E E D I N G S**

(Court was called to order by the courtroom deputy.)

(Proceedings commence, 1:01 p.m.)

THE COURT: Be seated.

THE COURTROOM DEPUTY: Civil Case 22-203, Ryan Six vs. IQ Data International, Incorporated. This is the time set for a discovery dispute hearing.

Counsel, please announce your presence for the record starting with the plaintiff.

MR. THOMPSON: Good afternoon, Your Honor. Russell Thompson on behalf of the plaintiff, Ryan Six.

MS. VAN VRANKEN: Good afternoon, Your Honor. Amber Vranken on behalf of IQ Data.

MS. MCMANIS: And Erin McManis on behalf of IQ Data.

THE COURT: Okay. Thank you all.

So I've read the motion for the resolution of the discovery dispute. I looked at the correspondence. I thought it would be helpful to have this conference and have it in person, because I'm -- I'm quite concerned about the -- the track that this case is going on.

Normally I get a FDCPA case or a case of similar -- a similar nature, and I see lawyers at a Rule 16 conference, and then I never see them again because it settles. But I've had a Rule 11 motion. I've had, you know, your motion to strike defenses. I had a previous discovery dispute. Now I have this

discovery dispute.

And when I look at the statute, it says: The amount of damages available are, one, actual damages sustained by such a person as a result of the failure. And here -- I mean, I don't know what kind of actual damages your -- the -- that the plaintiff could prove here by getting a letter; two, in the case of any action by an individual, such additional damages as the Court may allow, but not exceeding $1,000.

So here we are, again, with a very small number. And then you go on here to (a)(3), and it talks about a reasonable attorney's fee. You know, I don't -- I don't think lawyers should make a living churning cases on -- on -- on attorney's fees motions, so I think I'd say that. But, you know, that's just the -- my general approach. But the general approach is not followed when I think that the defense lawyers are being difficult.

And I think you are being difficult. And I think as -- as I told you at the Rule 16 conference where you highlighted the Rule 11 motion, I thought I communicated to you that I thought it would be ill advised, yet, you filed it.

And I could have asked him to move for sanctions against you for filing a frivolous motion, but I didn't. I don't know if I'll be so generous in the future. So I hope you keep that in mind. I understand your argument when it comes to standing. If he hasn't suffered any damage, then why are we

here?

But, Ms. Van Vranken, I mean, you have filed -- you could have filed a motion to dismiss. You didn't. You could have filed a summary judgment motion on it. You didn't. I know you still have time to file a summary judgment motion, and I -- I would expect to see it from you at the right time, but -- but when -- as long as that is, we're waiting for that, I think you have an obligation to cooperate with discovery.

And as I -- as I read some of your objections -- and I think -- I think -- I think Mr. Thompson is entitled to a lot of what he's asked for and that you're not giving him. And -- and you might have objections. You know, broadly worded discovery requests. Of course he's not asking you for attorney-client privileged material. Of course he's not asking you for work product material. To the extent there is such material that would be responsive, you are required to provide a privilege log if he asks for it.

But when I -- when I read your responses and you say such things as, our objection's based on privilege stand, and it doesn't -- and there's nothing to indicate to me that you made any effort to produce responsive and non-privileged material, then I'm concerned.

So, you know, why don't -- why don't you tell me, Ms. Van Vranken, what it is that you've -- you've produced to Mr. Thompson and -- you know, and what -- what else we need to

do.

You know, normally when I read something like this, I -- I would see, well, your -- your RF -- your interrogatory's really overbroad, and here's why it's overbroad, but here's the answer we'll give you for the time being.

And then -- and then he could assess whether there's something missing from the answer that he thinks he's entitled to.

So why don't you -- why don't you respond to all that.

MS. VAN VRANKEN: Thank you, Your Honor. Sorry. Can you hear me?

THE COURT: I can.

MS. VAN VRANKEN: Okay. Thank you, Your Honor.

So with regard to the objections for overbroad and the objections for attorney-client privilege, when reading these type of broad interrogatories, they can be interpreted to include all of the communications between our client and ourselves as well as prior communications between our client and ourselves. And a requirement for us to give a privilege log for every single communication that we have had in the past and have continued going forward we feel would be unduly burdensome. So that's where those objections come from. And that's been something discussed between counsel as well.

We have talked about this. We've done the -- the letters back and forth as well. But really this case is not a

document intensive case. It's about one letter, one letter that was sent in 2021. But this account dates back to 2017. So when you're asking for every individual that may have provided any information that -- that was looked at or reviewed in producing any of the discoveries, that's going to include any employee from IQ Data that has put any mark -- demarcation on what's called the work card, which is the document that's been produced. That says every single thing that's happened on this account.

So back in 2017, there was lots of entries. 2018, 2019, 2020, there's lots of entries. And those just simply aren't relevant to the case. And all of the identification of every single employee that's added to that list of information is just not relevant, and it's unduly burdensome for us to have to look into every single employee that had touched the file at any point in time since 2017.

That's kind of the reason for the objections.

THE COURT: Okay. And have you -- have you responded to Mr. Thompson with the agreements and policies and -- within the time frame of 2021?

MS. VAN VRANKEN: Yes. So the agreements and policies that are relevant to this issue of communications with a representative individual and also mail handling have been provided.

Also, even though likely those letters are already in

their possession, the letters that were sent to plaintiff were provided. The work card that I discussed was provided. All of the account information that's been provided by the apartment complex, like the lease agreement, the move-out statement, those things have also been provided.

THE COURT: Okay.

MS. VAN VRANKEN: I think there's about 81 pages of documents that have been provided, but it's just because it only should be in the narrow scope of what happened in September 2021.

THE COURT: Okay. So, Mr. Thompson, why -- why are you asking for documentary evidence and interrogatory responses beyond, did you say August -- September of 2021 or -- or maybe August of 2021? Is -- is Ms. Van Vranken representing that accurately?

MR. THOMPSON: Your Honor, we would disagree with that assessment. The definitions in our discovery request and instructions say: Unless otherwise specified in a particular paragraph, provide the information and documents requested for the period of time between the present and the number of years prior to the date of filing the original complaint equivalent to the longest statute of limitations period of any claim.

That's a year in this case, Your Honor. We're not asking for documents from 2017. We're not asking for documents from 2018. And the only time that we are, it's policies and

procedures relating to the collection at issue here.

THE COURT: Well, like, for -- for example, your Request for Production Number 5, which is the subject of -- of this dispute, all documents memorializing, et cetera, agreements made by defendant related to the collection of the account including, but not limited to, defendant's agreement with the creditor and any agreement with any credit reporting agency.

So I think the -- the time limit for Request for Production Number 5 should be limited to at the time that the letter was sent or perhaps at the time any reports were made to a credit reporting agency, which could be the same time or it could be a -- a span of months or something like that.

Wouldn't you agree with that?

MR. THOMPSON: Yes, Your Honor. We worded it -- we specifically worded it as related to the collection of the account, which -- which I understand. But if that -- it depends when the policy was enacted. I can't imagine that there's been five, six, seven different policies over the span of time. If there had, and counsel had said that, I could have clarified, you know, only within --

THE COURT: But is -- okay. And I apologize for cutting you off. I don't mean to be disrespectful. I have a -- I have a criminal trial that's going to start in 15 minutes, so I want to be efficient.

So the collection of the debt, whatever that time period was, does that include when the letter was generated, auto-generated, and sent to your client?

MR. THOMPSON: Yes, Your Honor.

THE COURT: Okay. So -- so you're not complaining about any other aspects of the debt collection other than the fact that this letter was generated and sent to your client?

MR. THOMPSON: Correct, Your Honor. The only -- the reason that that date is not the date that we would choose is the letter was actually received on the 30th when the letter was -- the -- the notice letter of representation by counsel, it was delivered to the UP -- their UPS mailbox, USPCS P.O. Box -- excuse me -- on the 26th of August. They didn't pick it up until August 30th.

THE COURT: Okay.

MR. THOMPSON: And then they didn't enter the notice -- the representation into their system until September 3rd. And by that time it had mailed out the letter dated September 3rd but requested the date previous. So we're seeking policies and procedures related to that.

We have no policies about picking up mail at the -- the P.O. Box. No policies about picking up certified mail. We do have policies about processing mail, which we have no issue with, and for at least somewhat, maybe it's the only policy, on entering notice of representation by counsel on phone calls.

We have nothing about how it's implemented. We don't know if employees are trained on these policies.

And, to us, one of the biggest issues is simply telling us whether they're withholding documents. If they're not withholding documents, well, then there's not an issue. But if there's responsive documents, ten objections and you're answering subject to all of those objections, it's impossible for us to know.

This is similar to the privilege comment. You know, I -- I take -- we had a conversation during the discussion, the 37 calls on this, that we weren't asking for them to identify every single email by date, subject, things like that, and they could include in their privilege logs emails between counsel and client. And that would be fine with us because we know we're not entitled to that information.

So this burden that they keep mentioning is simply not there. If -- it seems like we're getting opposed at every single step of the way. You know, one of the reasons that we hoped that the Court would set a conference today is to set some deadlines for some things that the Court has ordered the defendant to do. You know, the Court ordered them to supplement their expert disclosure statement. That was weeks ago. We haven't received any supplement whatsoever. Discovery closes on the 28th of next month. Expert depositions are due by the 23rd of next month.

THE COURT: I think that order went out about a month ago; is that right? Can you tell me what day?

MR. THOMPSON: I should have it in here.

August 23rd.

THE COURT: Okay. Well, I mean, there are penalties and sanctions for untimely disclosures.

MR. THOMPSON: Yes, Your Honor. It just puts us in a difficult position of whether we can initiate another discovery dispute on it, whether we should continue to wait and confirm that they're not supplementing, because we need to get depositions noticed. We have a settlement conference set for October 11th. Again, we're going to likely be going into that without the benefit of a deposition, of --

THE COURT: Tell me who the Magistrate Judge is. Is it Judge Fine?

MR. THOMPSON: Yes, Your Honor.

THE COURT: Okay. All right. Well, let me ask Ms. Van Vranken.

When do you -- when are you going to comply with my order from August 23rd?

MS. VAN VRANKEN: Thank you, Your Honor. The -- the draft supplemental disclosure is right now with our client, and we have plans to speak with him either at the end of this week or next week to -- to finalize that.

THE COURT: Okay. Well, I'm going to order you to

produce that to plaintiff no later than next Wednesday, which is, I think, September 28th. And if you don't produce it or if it's unsatisfactory, then I'll invite plaintiff's counsel to file an appropriate motion.

Understood? Okay.

Now, Mr. Thompson, can you please offer to us on the record a reasonable time period, a clear time period -- because the way you've explained it to me, I would be confused as to what time period you're looking for. So tell me what -- what is a reasonable time period for the defendants to respond to your request for production and interrogatories? And be mindful that your complaint only alleges one -- one event that violates the act.

And, number 2, as you are -- are very well aware, Rule 26 says that discovery needs to be fashioned in a manner that's proportional to the needs of the case. So you can't go on fishing expeditions, or you can't -- I see this in the products liability context. You can't go and try to get stuff from this case that you can use in a future case. All right?

So why don't you propose something that we can all agree to.

MR. THOMPSON: Yes, Your Honor. I understand that. Plaintiff's position is that his claims are not in dispute at all and that the only real issue is defendant's numerous defenses, including the bone fide error defense for which

they've identified the expert.

So really that's -- that's mostly what we're trying to track down at this point. If we know the facts of the defense, we can question, well, maybe even the people that handled it, if those people provided information. Again, they've only disclosed their corporate rep and the expert --

THE COURT: Well --

MR. THOMPSON: -- which, at the same time --

THE COURT: -- I'll let you know I'm inclined to agree with you that they need to answer your interrogatory on the affirmative defenses. Okay? So are you -- are you content with waiting for a response to that, or -- or would you like us to lock in a date -- a date range?

MR. THOMPSON: Your Honor, I would definitely like to lock in a date. The issue that I'm concerned with personally is that we're not going -- two weeks, I would think, is a reasonable amount of time. I don't know what that brings that up to exactly. I would -- hopefully that's a date before the settlement conference because --

THE COURT: Well, I'm talking about a date range for discovery.

MR. THOMPSON: Yes, Your Honor.

THE COURT: You -- and -- and are you talking about a date for them to respond?

MR. THOMPSON: Yes. I believe if they supplement -- I

was thinking a date to supplement was what you were asking as opposed to moving the discovery deadline.

THE COURT: No. I -- I'm not going to get there yet. What I want to do first is establish the relevant time period for defendant's counsel to work with their client in order to provide you with supplemental responses to your -- to your discovery requests.

MR. THOMPSON: Yes, Your Honor. And that's what I would think would -- two weeks would be reasonable.

THE COURT: No, no. You're still not understanding.

MR. THOMPSON: Okay.

THE COURT: All right. When -- what is the date that you claim your client was damaged? Or when -- what -- or let me put it this way: What is the date of the -- the violation?

MR. THOMPSON: We believe the date of the violation is September 3rd.

THE COURT: Okay.

MR. THOMPSON: Now --

THE COURT: And you mentioned some other dates, a date it was --

MR. THOMPSON: Yes.

THE COURT: -- generated.

And what date was that?

MR. THOMPSON: It was generated on September 2nd.

THE COURT: Okay. So now we're at 9/2. There was

probably an evaluation period. Somebody probably had to evaluate something. Maybe; maybe not if it was auto-generated.

What I'm trying --

MR. THOMPSON: Well --

THE COURT: -- to suggest is, is there a time period --

MR. THOMPSON: Yes.

THE COURT: -- before September 2nd that you think is important?

MR. THOMPSON: Yes, Your Honor. I would think at least August 26th, which is the date prior counsel's notice of representation was delivered to defendant's mailbox.

THE COURT: Okay. So now we're at -- so let's for now work with August 26th as the -- the -- the opening date of our time range.

When is -- when is the last day of our time range that you think is important to you for your -- for the claim that you are -- you have asserted in your complaint?

MR. THOMPSON: I would -- I would think September 3rd, the date -- the date of the letter and the date that the letter was mailed.

THE COURT: Okay. All right. So I'm going to give you another week on the front end, and I'm going to round it up to 8/15. I'm going to round it up to 8/15, and then I'm going to set 9/3 as the date on the tail end. And that looks like

it's about three weeks.

Ms. Van Vranken, would you have any objections to us all agreeing that the relevant time period for responding to defendant's --

MR. THOMPSON: Well --

THE COURT: -- discovery is August 15, 2021, is it, to September 3rd, 2021?

And you -- do you want to say something?

MR. THOMPSON: Yes, Your Honor. I -- now that I'm -- I'm thinking more clearly, the issue is an offset defense. So necessarily information related to the alleged debt, including, you know, it becoming owed, you know, any contract that was signed I believe is -- is well before then, many years before then.

So I just want to make clear that related to the claim, that would be the applicable time period, but related to their defenses would go to whatever they need to prove for the defense.

THE COURT: Okay. Well, we -- that's on them, because I'm -- I'm asking you about your claim.

MR. THOMPSON: Okay.

THE COURT: So if -- if they have -- if they have an offset defense or any other defenses, then the relevant time period is -- is going to be keyed from -- from their defense.

So let's just stick with the affirmative claim,

8/15/2021 to September 3, 2021. Is that something that you can live with?

MS. VAN VRANKEN: Yes, Your Honor. Thank you.

THE COURT: All right. So that is going to be the relevant time period concerning plaintiff's discovery requests associated with the FDCPA claim in his complaint.

Okay. Now, what I -- what I think we should -- how we should probably handle the defense's is I think that the -- that defense counsel is just going to have to answer his -- his interrogatories and provide documents, and then we'll see where that -- where that takes us.

So that, for example, there might be relevant documents that are -- that are dated five years before the -- the date that the -- that the letter was sent. That just has to do with -- with the defense that you're crafting for your client.

Mr. Thompson, do you agree with that?

MR. THOMPSON: Yes, Your Honor, I agree with that.

THE COURT: All right. And, Ms. Van Vranken, do you have any objection to that?

MS. VAN VRANKEN: No, Your Honor. But if I may, I have one question for clarification?

THE COURT: On which matter?

MS. VAN VRANKEN: On the -- the affirmative claims.

THE COURT: Okay. What is your question?

MS. VAN VRANKEN: I'm just hoping to clarify whether or not the request for supplementation is limited to those items that were specified within the joint report. There was numerous items that went back and forth in the prior communications. It's our understanding that those are resolved based on the back-and-forth communications.

THE COURT: Okay. So I'll answer your question this way: I -- as far as I'm concerned, the only discovery before me on this -- on this dispute and on this record is Requests for Production 5, 6, 7, and 8, and interrogatory 1, 6, 8, 9, 10, and 11.

Does that sound right, Mr. Thompson?

MR. THOMPSON: Yes, Your Honor. We're only concerned at this point with the -- the interrogatories at issue --

THE COURT: Okay.

MR. THOMPSON: -- in the dispute.

THE COURT: And, Ms. Van Vranken, I feel that that satisfactorily answers your question.

MS. VAN VRANKEN: Yes, Your Honor. Thank you.

THE COURT: All right. Then -- then are you -- do you understand then that I am going to order your client to respond to the -- to these discovery requests in the manner that I've just discussed, applying that limited time period to any discovery requests that relate to the plaintiff's claim in his complaint, but you're to fully respond to any discovery

requests concerning your client's affirmative defenses?

And, of course, nobody's asking you to produce privileged information or work product related information. But to the extent you -- you can, I think you need to produce a privilege log, because that's what the rule says. Okay?

MS. VAN VRANKEN: Yes, Your Honor. Thank you.

THE COURT: All right. And I feel like that fully resolves the discovery dispute motion that's before me.

Does anybody have anything else on the discovery dispute that I might have missed?

Mr. Thompson, I'll ask you first.

MR. THOMPSON: No, Your Honor, other than setting a deadline for the supplementation.

THE COURT: You are right, Mr. Thompson. I'm going to give you two weeks. Two weeks from today. That's October 5th. And that will give plaintiff's counsel enough time to evaluate those responses ahead of time and prepare for the settlement conference.

Okay? Anything that I missed on this discovery dispute? Are we all clear?

Mr. Thompson, yes or no?

MR. THOMPSON: Yes, Your Honor. With respect to the discovery dispute, we are 100 percent clear. Thank you.

THE COURT: Ms. Van Vranken, yes or no?

MS. VAN VRANKEN: Yes, Your Honor. Thank you.

THE COURT: Okay. Now, listen to me. I really think you need to settle this case. I feel like both of you are probably at -- you know, I think you, Mr. Thompson, are probably -- when all is said and done, you're going -- this case is going to be a loss for you. And -- and, I mean, maybe -- we'll see what happens. We'll see what happens. But I think at -- you know, after a reasonable attorney's fees, you might end up taking quite a bit of a haircut.

And for your client, the defendant, I think they're throwing good money after bad, and I think they've been doing that for a while.

And I think you two are professional. I think you should figure out a way to resolve this in a manner that makes both of your clients satisfied. Not necessarily happy, because nobody's really happy when they're settling litigation, but -- but at least satisfied.

So I want to wish you the best of luck at that settlement conference. And if there's anything you need from me in the meantime, just let me know.

Do either of you have anything else you'd like to share with me at this time?

MR. THOMPSON: Your Honor, I would like to discuss the -- the remaining deadlines, the discovery deadline and the expert deposition deadline. We obviously don't want to increase fees further by doing any depositions between

October 5th and October 11th but assume it's going to be a tight squeeze to get it in after October 11th if the case does not settle.

THE COURT: Okay. Let me -- let me ask Ms. Van Vranken. Would you be open to a modification of the pretrial schedule in order to accommodate the mediation?

MS. VAN VRANKEN: Yes, Your Honor.

THE COURT: Okay. What I'm going to ask you to do then is I'm going to ask the three of you to confer. You could do it after I adjourn this hearing. Come up with a reasonable modification to the -- the discovery schedule. And by reasonable I -- I mean like 30 days, something like that. And it's simply to take into account the -- the mediation and that there is some outstanding discovery.

I understand that taking depositions is -- is extremely costly and -- and if I -- if I can put my faith in you to settle the case at the settlement conference, I'm willing to give you the benefit of the doubt.

So why don't you confer and then file a joint motion to modify the discovery schedule. Tell me as much as I need to know in there that -- that creates a record for yourselves supporting the modification, and I'll give it the consideration it deserves.

How does that sound?

MR. THOMPSON: That's perfect, Your Honor. Thank you.

MS. VAN VRANKEN: Yes, Your Honor. That works. Thank you.

THE COURT: How quickly can you get that joint motion to me? By Friday?

MR. THOMPSON: Yeah, Your Honor. I don't think that'll be an issue. I'm preparing for some Tenth Circuit oral arguments next week, but -- I'm a little crunched on that. That's a simple enough issue, to move dates 30 days, that I --

THE COURT: I think if you look at the calendar and find out what the 30th day is, as long as it doesn't fall on a Saturday, Sunday, or holiday, which would require a little bit of extra thinking and a little extra work, I think you'll be pretty quick.

You know, maybe -- maybe her paralegal will do it for you. I don't know. If you ask her really, really, really nicely. Or maybe -- maybe a secretary. Okay? But since you're asking for it, you're ultimately responsible for it if -- if defense counsel can't do it. Okay?

MR. THOMPSON: Understood.

THE COURT: All right. Anything else, Ms. Van Vranken?

MS. VAN VRANKEN: No, Your Honor. Thank you.

THE COURT: All right. Ms. McManis, anything for the good of the order?

MS. MCMANIS: No, Your Honor. Thank you.

THE COURT: All right. Thank you, counsel. Court is adjourned.

(Proceedings conclude, 1:32 p.m.)

---oOo---

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 5th day of October, 2022.

s/Cathy J. Taylor
Cathy J. Taylor, RMR, CRR, CRC