UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **Ryan Six,** | ) | |
| | ) | No. 22-cv-00203-PHX-MTL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Phoenix, Arizona |
| **IQ Data, Incorporated,** | ) | December 1, 2022 |
| | ) | 1:05 p.m. |
| Defendant. | ) | |
| | ) | |

**BEFORE: THE HONORABLE MICHAEL T. LIBURDI, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**HEARING TO DETERMINE SANCTIONS**

Official Court Reporter:
Cathy J. Taylor, RMR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiff:
THOMPSON CONSUMER LAW GROUP, PC
By: **Mr. Russell S. Thompson, IV, Esq.**
11445 East Via Linda, Suite 2-492
Scottsdale, Arizona 85259

For the Defendant:
CARPENTER HAZLEWOOD DELGADO & BOLEN, PLC
By: **Ms. Ember Ann Van Vranken, Esq.**
**Ms. Erin Elizabeth McManis, Esq.**
**Mr. Joshua Bolen, Esq.**
1400 East Southern Avenue, Suite 400
Tempe, Arizona 85282

**P R O C E E D I N G S**

(Court was called to order by the courtroom deputy.)

(Proceedings commence at 1:05 p.m.)

THE COURT: Be seated.

THE COURTROOM DEPUTY: Civil Case 22-203, Ryan Six vs. IQ Data International, Incorporated. This is the time set for hearing to determine sanctions.

Counsel, please announce your presence for the record starting with the plaintiff.

MR. THOMPSON: Good afternoon, Your Honor. Russell Thompson, IV, on behalf of the plaintiff, Ryan Six.

THE COURT: Okay. Is that Mr. Six sitting next to you?

MR. THOMPSON: It is, Your Honor.

THE COURT: Okay. Good.

MS. McMANIS: Good afternoon. Erin McManis on behalf of IQ Data. I'm here with co-counsel, Ms. Ember Van Vranken. And in the first row behind me is the firm's co-managing partner, Joshua Bolen, and Mr. Lance Martin, corporate counsel for IQ Data.

THE COURT: Okay. Well, Mr. Bolen and Mr. Martin, if you want to sit at counsel table, you can. It will certainly be more comfortable for you.

So I -- I stated at least once, maybe multiple times, that I felt like this lawsuit was being unreasonably litigated.

And I stated it on the record, and I provided specific details at an earlier hearing. A Rule 11 motion was brought to my attention. And I -- I was trying to be kind about it, Ms. Van Vranken, maybe -- maybe you just didn't get it, but I don't think anything has been done that would even warrant the examination of -- of a Rule 11 motion. And I would -- I would just point to the statute, 15, United States Code, Section 1692(k)(a)(2)(A). Congress has specifically authorized this action. Somebody sends a notice to a debt collector that they're represented by counsel and that debt collector sends some notice to the -- the -- the collectee, that's a violation of the act. And if there's a violation of the act, the plaintiff could obtain either actual damages or statutory damages.

And so I know there's a dispute as to whether there is actually a violation, and I know there is a dispute on your good-faith defense -- or the good-faith mistake defense, but that's -- that's to sort out through discovery, through summary judgment motions. And if -- and if that doesn't terminate the case, then a trial. It's -- it's not the subject of a Rule 11 motion. And that just kicked it off.

You know, I told you I don't think -- I don't think that's a good idea. I think I used the phrase Vegas betting odds, yet you just didn't get it. And it's concerning to me to now learn in these filings that you used that Rule 11 motion to

leverage a settlement. And I think that's unethical, and I think the Arizona State Bar's going to have to examine that.

When you use a Rule 11 motion to lever a settlement, you are driving a wedge between the lawyer and the client, because then you put the lawyer in a position to think in a matter of self-preservation and self-interest in a way that might be adverse to the client's interests. I think you know that.

I'm concerned that you filed a -- a stipulation with the Court with -- with your name on it asking me to adjust the scheduling order. And in the scheduling order you -- or in the stipulation you said that you wished to preserve resources, client resources and whatnot, and, you know, judicial resources in order to participate in a settlement conference.

And -- and based on your representation to me, I entered that order. I amended the scheduling order. But what you were really doing, you had this summary judgment motion up your sleeve, and you didn't tell him. You didn't tell Mr. Thompson. You didn't disclose that to me. You misled me. You were not frank with me. You lied to me, and you lied to him. And based on your misrepresentation, I took action that I now regret.

So you levered a Rule 11 motion, you misrepresented to me and your opposing counsel the reasons why you sought an extension to the settlement conference, and then I read about

this in the settlement conference. And it sounds like it kind of went off the rails.

I'll ask you for -- to comment on that in a minute, but it -- it sounds like it -- it went off the rails. And I'm -- I'm concerned that you did not enter into that settlement conference in good faith. And so you wasted Judge Fine's time. You wasted my time. You wasted Mr. Six's time. You wasted Mr. Thompson's time.

But to get back to the Rule 11 motion, I mean, Congress specifically authorizes this, so -- this action. If I were in Congress, would I have voted for this? I don't know. Maybe not. Maybe I would have; maybe I wouldn't have. I don't know what you -- but I have -- I have this statute. My job -- I took an oath to uphold the laws of the United States, and so that's why we're here.

It's not a Rule 11 violation for him, Mr. Six, and then Mr. Thompson, to file a lawsuit against a debt collector for a violation of -- of a policy that Congress enacted. And policy -- and Congress provided for a private right of action. Congress provided for statutory damages. It is the discovery process, it is the trial process, and it is the settlement process to resolve these claims. It's -- it's not for us to -- to question Congress's wisdom. That's why we have elections every two years.

Your explanation that you've used the Rule 11 motion,

and I'm quoting from -- from your brief, "because of the threshold to prevail on a motion to dismiss is also high and may" -- "and many times Courts provide an opportunity for the plaintiff to amend the complaint to essentially cure the issues raised in the motions to dismiss," this is a bizarre explanation to me. I can't wrap my head around this, that you decided to use a Rule 11 motion instead of a motion to dismiss to assert your standing argument?

I told you when we were in here one of the previous times, I -- I mean, standing is often brought up on a Rule 12(b) motion. It's often denied if standing is apparent from the face of the complaint. That's why you go to discovery, and then that's why you have a summary judgment motion.

And -- and why is -- why would that be a problem if there were facial defects in his complaint? And he -- and he can have the opportunity to amend it and cure those defects. Indeed, you have a duty under our local rules to have a pre-motion meet and confer with opposing counsel and point out any defects in the complaint and see if it can be cured by an amendment. And that saves my time. That saves your time. That saves his time.

You know, it saves my time. I could focus on habeas cases, people who are in prison who think they need to get out of prison. I mean, I think that's a high priority. In fact,

Congress has said that's a priority for me. So I could focus on habeas cases. I could focus on sentencing criminal defendants, you know, people who are awaiting sentencing. Many of them have time-served sentences. So, you know, I could get to that. But, no. Instead I'm dealing with this other stuff.

And when lawyers, they get together and they complain about judges not being fast enough, well, my motion has been pending for eight months, it's because of people like you who are filing ridiculous, baseless motions that cause me to have to deal with them and devote my staff when I could be working on other things. So that's the Rule 11 motion.

And don't you -- who here with me thinks it's ironic that we're here because you refused to give him a 30-day extension?

Mr. Bolen, do you think -- have you ever refused an extension request by opposing counsel?

MR. BOLEN: Typically, no, Your Honor. But when I've been instructed with the client's wishes to not do so, then we face a conundrum of the client wants the case litigated in a certain way. And as counsel, we can't -- as you well know, the client or the advocate --

THE COURT: Well, I disagree with you that a lawyer is bound by the client's direction on providing a courtesy to opposing counsel on extensions or -- I disagree with you. I think the State Bar of Arizona disagrees with you as well.

MR. BOLEN: I do not --

THE COURT: Okay.

MR. BOLEN: -- to be honest. That's the only part I could disagree. Would I ever not grant that extension if I had the ability to do? Maybe not. It depends on the circumstances.

THE COURT: You're not answering.

Have you ever denied an extension -- a filing extension --

MR. BOLEN: Yes.

THE COURT: -- in your career? Okay.

MR. BOLEN: And I've had a number of them denied to me, unfortunately.

THE COURT: Sir, what was your name again? The client.

MR. MARTIN: Lance Martin.

THE COURT: Okay. Mr. Martin, do you find it ironic that -- that your company and your law firm is ensnared in a sanctions hearing because you directed your lawyers to deny a 30-day extension?

MR. MARTIN: No.

THE COURT: You don't? You don't find it ironic that denying a 30-day extension to a summary judgment motion that was filed after your lawyers filed a motion with me to extend the scheduling order deadlines telling me that they were going

to preserve resources but they didn't?

I mean, I think you get the point. But -- but don't you find it odd that -- that now you and your company is ensnared in having to pay potential sanctions to this guy?

MR. MARTIN: I don't, Your Honor.

THE COURT: You don't? So you're -- you're comfortable with being in here defending your decisions in this case and your client's -- your counsel's decisions?

MR. MARTIN: I am. This case is part of a -- a -- this is -- this is one case out of thousands of cases. Mr. Thompson's firm is a volume practitioner. Our firm is sued frequently. And this is all part of the larger strategy and larger --

THE COURT: Okay. Why don't you go meet with Patty Murray, who's your United States senator, and why don't you go and take this statute to Patty Murray, Senator Murray. She's been in Congress for a long time. She has some seniority. Why don't you sit down with Senator Murray and say: You know -- you know, Senator, this -- there are these lawyers out there. They're churning these cases. They're costing my clients money. Could you -- could you revisit this?

And instead -- instead, here we're here taking up my time.

What do you think of that idea?

MR. MARTIN: It's -- Your Honor, it's not about the

statute. I -- we have -- I have no issue with the statute that -- the issues come in the litigation strategies that are employed by plaintiffs' attorneys in these types of cases. I don't think these cases belong here either. But these cases, where there are no actual damages, there is no Article 3 standing in federal court. That's why we filed a Rule -- a motion for Rule 11. That's why we filed motions to dismiss, motions for summary judgment.

THE COURT: You didn't file a motion to dismiss. You didn't. Your counsel filed an answer.

MR. MARTIN: I know that, but the -- the -- the -- the genesis of the disputes in this case started from the Rule 11 motion and -- and the Rule 11 --

THE COURT: Did you approve the Rule 11 motion?

MR. MARTIN: I did approve it.

THE COURT: Was it your idea, or was it your counsel's idea?

MR. MARTIN: I do not recall who -- whose idea. It's -- but --

THE COURT: You don't remember if it was you who said, hey, let's file this Rule 11 motion, or somebody from your -- from the law firm came to you and said, I got a great idea, let's Rule 11 this guy?

MR. MARTIN: It's not personal to Mr. Thompson. It's not personal to this case, Your Honor. It's -- it's -- our

position is that if there are no actual damages, the Ramirez cases from the Supreme Court indicates that these cases do not belong in federal court. And so our approach is to remove them out of federal court.

THE COURT: Remove them where? To -- remove them out --

MR. MARTIN: Mr. Thompson is in the wrong court. This is not a district court case. No different than --

THE COURT: This is not -- this is a federal statute. Did you learn federal subject matter jurisdiction in your law school?

MR. MARTIN: I did. But there's no Article 3 standing here. There are no actual damages. The Ramirez case says that this case is not appropriate for the federal district courts.

THE COURT: Well, why didn't you file a motion to dismiss then?

MR. MARTIN: We filed -- we file various types of motions depending on the jurisdiction and the opposition and the -- the likelihood of success based on whatever motion may be most appropriate. We -- our approach in all of these cases -- this is not just about this case. It's about the hundreds of cases that we are involved in.

THE COURT: Have you filed a Rule 11 motion against other counsel?

MR. MARTIN: Absolutely.

THE COURT: And how has that been resolved?

MR. MARTIN: Most counsel acknowledge if they have no actual damages that they are -- it is not appropriate to be in federal court. And they -- either we resolve those cases or they will -- those cases are -- are dismissed and refiled in state court. They're --

THE COURT: So a case is -- a case is refiled in state court under a federal statute or something else?

MR. MARTIN: Under federal statute. Under some combination of federal and state statutes. Other states have similar statutes to the FDCPA.

THE COURT: Okay. Well, I haven't heard of state courts having exclusive jurisdiction over -- over causes of action under federal law. That's -- that's news to me.

MR. MARTIN: No. I'm not -- I'm not asserting exclusive jurisdiction. I'm saying that the Ramirez case states that if there are no actual damages, there's no federal jurisdiction. And here they've acknowledged many times there are no actual damages.

THE COURT: So then do you --

MR. MARTIN: So we asked them to please dismiss your case. You don't belong in federal court. And they said no.

THE COURT: Is it your position, Ms. Martin, that -- that anytime a plaintiff lacks standing that it's appropriate for opposing counsel to -- to Rule 11 opposing -- that lawyer

instead of filing a motion for summary judgment?

MR. MARTIN: No, not in every instance.

THE COURT: Okay. But in this instance you thought it was?

MR. MARTIN: In certain instances where the -- where the attorney does not -- does not recognize that they don't have -- they have no standing and they want to force us to incur the costs of going through discovery, motion practice, and --

THE COURT: Okay. Well --

MR. MARTIN: -- other aspects of the case.

THE COURT: -- let's talk about that. Let's talk about that. I looked at Mr. Thompson's initial disclosure statement. It was filed -- was it filed in your response -- your reply brief?

MR. THOMPSON: Yes, Your Honor. I believe it's Exhibit E.

THE COURT: Okay. And -- and I'd be happy to look at the defendant's initial disclosure statement if you have a copy for me.

Let's talk about your -- your expenses. So here -- here are the names of the people who he listed as likely to have discoverable information: Ryan Six, the gentleman sitting right there; a corporate representative for IQ Data; Thomas Addleman and Andrew Esselman. So four people.

How many people did you have on your initial disclosure statement?

MS. McMANIS: We're pulling it up, Your Honor.

THE COURT: Okay.

MS. McMANIS: But we definitely listed Mr. Six, a representative from IQ Data. And, you know, I -- you know, some standard, like if anyone else was possibly disclosed. But I know those two were listed.

THE COURT: So essentially four people. So essentially four people. And the document universe is -- is very limited. And, as we discussed -- as we established in a prior hearing, the time period is extremely limited. So if you had to conduct discovery, your discovery budget would be very limited. This -- this is not an antitrust case. This is not a complex real estate deal gone awry. This is a very straightforward case.

MR. MARTIN: I -- I completely agree, Your Honor. And this case should have been resolved in the very early stages for 3,000, 4,000, $5,000, as we have resolved prior cases with Mr. Thompson's firm. But Mr. Thompson would not resolve the case for a reasonable number, and we there -- we, therefore, had to move forward with all of the additional pieces of this case and the -- the litigation practice that was required.

Mr. Thompson has litigated this case just as aggressively and just as voluminously as we have. Mr. Thompson

attacked our affirmative defenses and our disclosure of our expert witness and every piece -- every step along the way, Mr. Thompson has attacked and initiated disputes around --

THE COURT: Well, first of all --

MR. MARTIN: -- all the pieces.

THE COURT: First of all, your corporate expert, that was improperly disclosed, so he was right to attack the way you -- your lawyers disclosed that expert. And there's a pending motion on that still. Okay?

He filed a motion on your affirmative defenses. In my order I said that -- I denied his motion. I denied it straightaway. I mean, I did say that some of the affirmative defenses seemed curiously asserted. But I do understand that almost in your universal tactic, if you're on the defense side, you're going to put your affirmative defenses in there because you don't want to lose them, and you know down the road he could file a motion for a summary judgment. Or maybe instead of filing a motion for summary judgment, he confers with your lawyers and you'd agree to drop some affirmative defenses. So I -- I handled that in short order.

And then we have this issue you -- of the email that was sent to the -- to the wrong email addresses.

Anybody on the defense side wish to address that? Ms. McManis?

MS. McMANIS: Yes. I mean, I can -- I can address it,

and certainly Ms. Van Vranken can come in.

I mean, once we received and paid more attention that -- that there was -- Mr. Thompson's first initial was left off of that email, you know, it's -- it's clear that it -- we agree that that was not sent. But we didn't -- we didn't realize that at the time. We certainly weren't trying to hide it. We didn't redact that portion of the email when we included it in our exhibit. I mean, if we -- he kind of implies we manufactured an email. We, A, would never do that. We certainly wouldn't have disclosed an email that wasn't valid, you know, in an exhibit.

But, in any event, once we received Mr. Thompson's response, Ms. Van Vranken did an extensive search of her emails and the junk email folders, the spam folders, under various ways. And we do have a printout -- you know, once she went back and looked in a date range, and we did have a bounce-back, but it went to the spam folder and so it wasn't received. We have printouts for everyone that -- that shows -- that shows that.

So that -- I mean, that was a inadvertent mistake. And since we didn't -- we didn't get the bounce-back to our email -- I mean, yes, we can be checking spam folders more -- more frequently, you know, a couple times a day, but that's where -- that's where -- that's where it went.

But, you know, in any event, the -- the actual context

of the email we -- we stand by that. I mean, that's what -- we intended to send that. And then we certainly did also send an additional email while the -- while the Rule 11 motion was pending and his motion for judgment on the pleadings was pending saying, hey, you know, this is an opportunity -- you know, do you want to -- if you have a settlement demand, you know, we'll take it. We'll take it to the client.

And I'm certainly happy to answer any additional questions, but I would just like to also state on the record that I'm the partner that is handling this matter at the firm, and so any substantive issues in the case, whether extending settlement offers, motions, certainly those were discussed with Ms. Van Vranken. I know all lawyers have their own ethical obligations, but everything was done at either my approval or direction. And, you know, I stand by my actions, but I'm also certainly willing to, you know, accept that responsibility because I was the one that was directing or approving it.

THE COURT: Right. So -- but I -- on this -- and I appreciate you saying that, and I understand you put that in your declaration as well. But when -- when I read the brief that you -- you filed, a lot of what you have to say is hinged on this email that never went to Mr. Thompson. And -- and a lot of what you're -- a lot of your rationale is, well, we tried to settle this case earlier, and he never responded to our settlement offer; and so, therefore, we employed an

aggressive litigation strategy.

And the reason why he didn't respond to it is because he never got the email. Somebody mistyped the email address, which is a mistake that happens frequently. I'm not going to say that that was anything more than an inadvertent error, but -- but now we're here and -- and your firm and your client's position is, you know, we've -- this whole problem snowballed because Mr. Thompson didn't respond to our email. And I don't think that's fair.

MS. McMANIS: Can I address that?

THE COURT: I want you to. Yes, please.

MS. McMANIS: All right. Yes, that was definitely in our -- in our motion. That was just one email, though. We also sent an email a few months, you know, later -- maybe less than a few months -- while the Rule 11 was pending: Hey, can we resolve it?

And Mr. Thompson even puts in his response if he had gotten the email, he would have taken it to the Court for -- you know, on it. So it's -- I mean, it's not like he -- if he had gotten the email he says he was going to resolve it. We also sent, you know, letters before the Rule 11.

And -- and I understand what Your Honor is saying that, but I guess my point is we certainly weren't hiding the fact that we were going to -- you know, to file this. There was never -- I mean, the first settlement offer we received

from Mr. Thompson came before the -- before the settlement conference.

I mean, I've -- I mean, the -- I mean, it's just an estimate, but the past, you know, two years I'm guessing, you know, 60 maybe FDCPA cases handled. You know, almost always you receive initial settlement demands from -- you know, from the person filing the lawsuit. They're after something. And in FDCPA cases, they're after -- they're after money and sometimes, you know, fixing -- filing forms to help their credit or, you know, waiver of the underlying debt. But -- but, you know, essentially it's money's involved.

And so, yes, the one email didn't go through. I 100 percent acknowledge that, you know. But he says that wouldn't have mattered. It -- we would have brought it to the Court's attention.

There -- you know, there was the second email that did go through where there's a -- you know, the Rule 11 pending. And there's certainly been communications with Mr. Thompson and our firm, you know, kind of well up to --

THE COURT: But as --

MS. McMANIS: -- that point.

THE COURT: As a more senior attorney, as a more seasoned attorney, do you understand what -- what the point that I'm making? That when you threaten a Rule 11 sanction against opposing counsel, you're putting opposing counsel in a

compromising position? It's different than filing a motion to dismiss or a motion for summary judgment in the sense that a Rule 11 motion puts counsel's interests adverse to the client's interests.

Do you -- would you at least agree with that?

MS. McMANIS: I mean, I -- I mean, I -- I could see that. I could certainly agree it's an uncomfortable position. I mean, I guess I don't know exactly how that would play out with the client. But, yes, I mean, I agree it's -- it's an uncomfortable position.

You know, but, Your Honor, it's -- it's still the -- you know, as the more seasoned attorney here, I have seen cases, FDCPA cases too, where -- you know, I'm thinking -- I'm thinking of one case in particular. You know, the -- you file a motion to dismiss. That's a high standard too.

And so maybe I could explain that, because I believe Your Honor said that part was curiously put in our --

THE COURT: What was curiously put? The high standard?

MS. McMANIS: The decision not to go with the motion to dismiss.

THE COURT: No, it is curious because -- because standing is standing. A -- a challenge to Article 3 standing in an FDCPA case, the -- the elements -- the analytical elements are the same as -- as it would be in *Defenders of*

*Wildlife vs. Lujan*, and all the case -- in Spokeo and all the cases. It's just kind of a different injury analysis.

And here the -- the injury could be is -- is he was injured because the statute gives him a right to be free of a letter that comes to him personally after he's notified the debt collector that they're -- they're represented. That could be as simple as the injury is.

I'm not here to adjudicate standing. I'm -- I'm -- my point is I think that a standing motion was more -- is more appropriately addressed in a dispositive motion than in a Rule 11 motion -- or a Rule 11 threat against -- against counsel.

MS. McMANIS: May I?

THE COURT: Yes.

MS. McMANIS: You know, I -- well, I certainly will take -- I understand what you're saying. I'll certainly take note of that if we're ever in front of Your Honor again, but -- and, yes, I also agree that whether it's an FDCPA case or another federal court statute, you know, the standing -- you know, standing is going to be -- need to be present in all those cases.

But to even -- to even walk in the door in federal court, you must have -- you must have the standing -- standing requirements. And so to have that go through a whole litigation process, I mean, it's -- I mean, that's the

threshold to come here. And I understand what -- that Your Honor's saying that you're not litigating the merits of a standing issue, but -- like the -- the actual case law, the -- that -- the most recent Ramirez case, I mean, it says that just a violation of federal statute alone is not enough to bring standing.

And so for a complete argument's sake, you know, even if -- let's just -- obviously this is hypothetically. If there was an FDCPA violation in this case, that alone is not enough to confer standing.

THE COURT: Is Ramirez an FDCPA case?

MS. McMANIS: It was a Fair Credit Reporting Act case, but it's analogous for federal court -- or federal -- federal statutes.

THE COURT: Okay. Is there any -- you know, is there anything else you want to address? Do you want to address the concern I have about you filing the stipulation with the summary judgment motion locked and loaded? Do you want to address that? Do you want to address -- oh, the other thing that I would bring up is -- is this -- I still am -- I want to talk about this position on plaintiff's damages theory. What I was able to glean from the papers is that defendant and counsel think that -- that plaintiff has to amend his complaint.

Is -- is that why you haven't fully accepted his avowment that they don't have -- they don't have actual

damages?

MS. McMANIS: Yeah. I -- can address that and the other. I can --

THE COURT: Can you just address that right now --

MS. McMANIS: Oh --

THE COURT: -- please.

MS. McMANIS: -- that one.

You know, it had -- on the -- at the onset of the case, you know, the filing of the complaint lists damages, yes. The disclosure statements that he brought in the motion, I mean, it says -- I believe it says something that we might maybe reserve the right or could bring forth damage. I don't remember the --

THE COURT: I mean, that's something lawyers -- lawyers do that all the time.

MS. McMANIS: Correct.

THE COURT: I mean --

MS. McMANIS: And so this is a case where it's not -- you know, it's not a personal injury matter where there are medicals that are going to be kind of ongoing or we may not know where it's going. This does involve a singular letter. So if there were damage, it's concerning that it's not put in the complaint: Oh, I -- you know, once I got this letter, I was so upset I, you know -- you know, had -- I had a nervous -- you know, a panic attack or I had to miss work, or things like

that.

And so if they had those types type of damages, it would have already occurred. And so it's curious --

THE COURT: Right.

MS. McMANIS: -- that it's not -- it's put in the complaint that there's actual damages. It's always kind of alleged, well, we can assert it later or not at this time. And so there's always that.

And there's -- there was certainly -- I mean, filing the complaint, I mean, there's those -- I mean, we all have, obviously, the -- the same duties and avowals that what we're filing is accurate or that it can be amended or that we need to take steps to correct that.

THE COURT: Okay. Right. But -- but as I look at this material -- plaintiff's counsel provided the heavily redacted settlement memoranda and -- and throughout here it says, for example: Relief sought. Mr. Six seeks judgment in the amount of $1,000 plus his reasonable attorney's fees.

And his initial disclosure statement, which was provided on April 19th, 2022, it says: Computation of damages claim. Plaintiff claims statutory damages.

Sure, he says he reserves the right, but -- but here's -- here's how I interpret this: Lawyers all the time we say -- we give a list and say something like, including without limited to but not limited to. We say stuff like, well, we're

going to reserve the right.

I mean, it's just the words of the trade. It's the words of the profession. I don't think he has to amend his complaint just because you and Ms. Van Vranken demand it.

Now, what you have in your arsenal is if he doesn't produce any evidence of actual damages during discovery, then you have summary judgment motion, you have a motion in limine, you know, if it gets that far. And even if it goes to trial, you -- and he presents evidence to the jury and he presents no evidence of actual damages, then you have the -- the motion for directed verdict on -- on the issue of actual damages. So you have, at least by my count, three -- see how I said at least three -- remedies for that rather than badgering him to amend his complaint. If -- if he wants to draft a complaint with ridiculous claims for relief, that's his choice, but then you have the opportunity to file dispositive motions on it.

So -- so do you understand my point of view on this?

MS. McMANIS: I understand that we have certain relief that you -- that you spoke of, but I -- I do believe that in filing a complaint you have to have a good-faith basis for the -- the items and accusations that are put in the complaint.

And like I -- as I mentioned, it's not an ongoing damage issue where, you know, maybe, well, you know, medical issues, we'll have surgery down the road, something of that.

If you're saying you have actual damages in the

complaint, then I think you need to actually have actual damages, otherwise that shouldn't be -- I don't believe should be in the complaint, because that would be -- I mean, that's a material statement in the complaint, and I don't see what the good-faith basis to put that in if you don't actually have those damages.

THE COURT: Okay. Well, I think I could probably draft a summary judgment motion based on what I've heard from you and from Mr. Thompson in a couple hours and get that on file.

Would you like to say anything else about --

MS. McMANIS: I would.

THE COURT: -- these issues?

MS. McMANIS: You brought up that you thought it was an ethical issue to -- to discuss or have settlement in conjunction with a Rule 11 -- 11 motion. And, respectfully, I -- I don't agree that it's an ethical issue. I do believe it's an ethical issue to leverage, like, a bar complaint. I know there's an Arizona opinion on it that would say something to the effect of we couldn't say, oh, if you don't settle this, I'm going to go to the bar and say A, B, and C.

I mean, that I would completely agree would be unethical. I believe one of the cases that were even cited was a -- was a more criminal matter. If we don't settle this, there's, you know, potential criminal issues.

This isn't -- I mean, obviously it's -- I mean, it -- just in the name, Rule 11. It's a rule that, you know, we have in the court within the confines of -- of litigation.

I -- I understand what Your Honor was saying that you don't think the Rule 11 was a proper motion to file. I do believe we had the basis for filing it. But that being said, it's not an outside action. We're not leveraging, you know, a bar complaint or something -- you know, something else. It's a -- it's a matter -- it's a -- it's also a dispositive, you know, motion with the Court.

And I -- I do believe that whenever there's dispositive motions pending or any -- any motion -- and there's always -- there's always time for -- to discuss settlement or bring settlement. Or if we're not -- if you're not going to do this, then we're going to continue on with litigation. If we don't settle it now, we're going to move forward. I mean, that's, I mean, typically done, in my opinion, in -- in litigation. I mean, we don't -- if you don't want to incur this, now's the time to -- now's the time to settle the matter.

And so I -- I am familiar with that, you know, the bar has definitely said you can't try to leverage or threaten a bar complaint to get your way in litigation. But, I mean, that's not what was done here. This was distinctly one of the rules and tools within the actual confines of, you know, the federal court's options.

So that's -- I mean, I -- I mean, obviously I don't want to have to explain myself to the State Bar. I mean, nobody does. But I feel confident in my ability to explain that to the bar.

THE COURT: Okay. And would you like to say anything else? And then I'm going to let Mr. Thompson have a moment to speak.

MR. BOLEN: Your Honor, can I say something?

THE COURT: Yes, you can, but I want to make sure Ms. McManis has -- has said what she'd like to say.

Are you --

MS. McMANIS: Oh.

THE COURT: Is there anything else you'd like to say?

MS. McMANIS: Oh, yes. Yes, Your Honor.

And then in terms of also the timing of filing a motion for summary -- motion for summary judgment, you know, I mean, most of the -- the work and -- is all done with the motion for summary judgment in terms of we've briefed a Rule 11. We have, you know, the arguments primarily in a settlement conference memorandum. You know, it's -- you know, certainly I -- I do believe it's a -- you know, it's an effective litigation tactic and strategy to have motions pending when -- when there is a settlement conference. I mean, it encourages the parties --

THE COURT: I agree with you.

MS. McMANIS: -- to settle.

THE COURT: I agree with you. That if you could get a motion for summary judgment on file, I agree. But what I'm concerned about is the -- I think the Rule 11 motion is a different animal, and I'm concerned about the representation made to -- to me, as the Judge in this case, that you intended to go into a settlement conference and you wanted to extend deadlines because you -- because you wanted to reduce costs, but that -- that, to me, wasn't truthful because you had this other motion ready to go. And -- and it didn't reduce costs.

So do you see what I'm saying, how I see the conflict in what you told me?

MS. McMANIS: I see what you're saying, Your Honor, but I -- I do believe -- and -- and, if I recall correctly, the -- when -- when Magistrate Fine was able to -- had available dates for the settlement conference, it was after the date that was on the -- on the scheduling order. I -- I believe that was -- that was the case.

But, in any event, I mean, it -- it still does conserve, you know, judicial resources. I mean, if -- because if a dispositive motion's pending, it encourages settlement, I mean, that motion goes away. We don't file --

THE COURT: Well, it doesn't. So we have the issue of the representation made to the Court. But also you filed the motion. You didn't redact the plaintiff's social security

number. That caused an issue with the Court. Then you filed a motion to file something under seal. You cited the completely incorrect standard. I had to deny that. You had to go back to the drawing board. I had to point you to the local rule.

So do you see it -- it really didn't save me any time?

MS. McMANIS: It -- it didn't. And I -- as I put in my affidavit, you know, as partner, I'm responsible for making sure things are -- are correctly filed. When -- I will say when -- you know, when it was revealed that something was filed with personal identifying information, I mean, that same day we -- we took the steps to correct it. I mean, I didn't -- didn't make excuses. Requested, you know -- we requested how you -- I mean, asked Mr. Thompson the best way it could be done. You know, we may have called your chambers. I mean, because, that was certainly not something I was happy or -- or proud of, and so we took the, I mean, immediate steps to -- to do it.

And, I mean, ultimately -- I mean, there -- there was that. There was that filing, but it still, I think, was the right motion to file to -- to potentially effectuate -- effectuate settlement. And we definitely went into that settlement conference in good faith. You -- I believe you mentioned or alluded that -- that given the timing of it that you questioned whether it was in good faith and whether it was a -- a waste of Magistrate -- Judge Magistrate Fine's time. I

mean, I -- I can assure you it -- it was -- it was not. I mean, we -- we had settlement offers, you know. I mean, we had exchanged settlement offers before. We were far apart. I mean, that's -- I mean, that's definitely -- that's definitely the case.

But we had frank -- I don't know -- I don't know how much I can or should be saying about what happens --

THE COURT: And I don't -- be --

MS. McMANIS: -- in the context of a --

THE COURT: Be --

MS. McMANIS: -- settlement conference.

THE COURT: Be discrete in what you tell me, because I don't want to jeopardize the mediation privilege.

MS. McMANIS: But we -- we certainly had conversations with Judge Fine, you know, about where we were able to go, what we were willing to do. But -- but, you know, it's going to be within, you know, tiers 1 and 2, you know. If they're up at, you know, 7, 8, you know, we're not -- I mean, we're not going to be able to -- to get far.

And -- but they were productive conversations. I mean, I believe it lasted about an hour and a half, maybe two hours. So it wasn't something where, you know, Judge Magistrate Fine just shot it down and -- and moved on, because there were actually, you know, discussions being -- being had.

THE COURT: Okay. Okay. Thank you, Mrs. McManis.

Mr. Bolen, what would you like to say?

MR. BOLEN: I just wanted to say one thing, Your Honor, about the email and apologize to Mr. Thomas [sic] about this, for that bounce-back that went in our spam folders. We've had a number of Malware attacks on the firm, and we have subsequently corrected those issues after it was brought to our attention.

So we do take those very seriously. We -- we want to get the right email with the right offers to everybody. So for the firm's culpability in the IT issue, I want to apologize to the Court and Mr. Thomas [sic] for those issues.

THE COURT: Okay. Anything else, Mr. Bolen?

MR. BOLEN: No, sir.

THE COURT: Okay. Ms. Van Vranken, would you like to say anything?

MS. VAN VRANKEN: No, thank you, Your Honor.

THE COURT: Okay. Mr. Thompson.

MR. THOMPSON: Your Honor, I only have a couple things.

The email -- the April 8th email has been discussed at great length. While we did submit the -- the portion without the actual terms offered, is how I would phrase it, I do have an unredacted copy that I -- I would ask permission to provide to the Court simply because of -- of what's in the offer and whether it's even actually an offer. Because, as Ms. McManis

brought up, there are some things in the State Bar that's discussed some of these things. It was tough for me to find it after I had an unredacted version of the email given the brief amount of time. There's things about extortion.

THE COURT: Well, I --

MR. THOMPSON: Things related to extortion.

THE COURT: I would prefer -- I guess I would prefer not to see it.

MR. THOMPSON: Okay.

THE COURT: If you think that there's really extortion, you could take it to Rachel Mitchell over at the County Attorney's Office.

MR. THOMPSON: Okay. I just thought I'd raise it --

THE COURT: Okay.

MR. THOMPSON: -- because the Court mentioned the conflict between the client. And that is certainly an issue with the email at this point, but I will move on along that.

You know, the other question with the email that I had and about the settlement offer in general is prior counsel tried to settle this matter pre-lit. I believe they sent at least a letter, draft complaint. Tried to resolve it with no response. So I didn't handle it pre-litigation. If I had, that's what I normally do as well. So settlement options would have already been attempted.

Where they haven't been responded to and the first

thing I hear is Rule 11 sanctions, you know, that's also a detractor from those sorts of things. But I'm also -- I'm also concerned that things would escalate so quickly after a single email. No follow-up emails. No telephone call. Because every day I send settlement emails that go unresponded to, and I'm following up --

THE COURT: You made that point in your brief --

MR. THOMPSON: -- weeks later.

THE COURT: -- to some extent.

MR. THOMPSON: The other thing, that the actual damages does not equate to injury in fact. However many times they want to say it, it's simply not the truth. Ramirez talked about intangible harm, which we briefed, so I won't bore the Court.

THE COURT: Again, like I said, this is not a dispositive motion hearing.

MR. THOMPSON: Sure. Sure. Exactly.

And then the only other thing about the reservations is -- is, you know, the irony of that when they reserved the right to assert additional affirmative defenses. It's the same thing, so --

THE COURT: Okay. All right.

MR. THOMPSON: -- nothing further, Your Honor.

THE COURT: Thank you.

All right. Here's -- here's one of the reasons why I

wanted clients here. My next hearing is at 2:40 -- 2:45. Do you want to go out in the hall and see if you could resolve this? You could come back. We'll put a settlement on the record. I'm going to give you that option. If you don't want to do it, I'm going to make findings.

What would you like to do, Mr. Bolen? Do you want to consult with your client?

MR. BOLEN: Yeah, I'd like to consult with our client.

THE COURT. Okay. Can you go -- can you do that right now? And we'll turn off the microphone.

MR. MARTIN: We're certainly willing to discuss that. And I'm always willing to do that, Your Honor.

THE COURT: Okay. Well, I want you to talk to your counsel about that.

And, Mr. Thompson, talk to Mr. Six.

I'm going to ask the deputy to turn off the microphones so there's no risk, you know, of me hearing anything. Okay?

(Brief pause.)

THE COURT: Okay. Please turn on the microphones.

Mr. Bolen, how would you like to proceed?

MR. BOLEN: Yeah, Your Honor, we're -- like Mr. Martin said, we're always willing to discuss settlement. So if we could try to resolve this matter at this point, we're happy to do it.

THE COURT: Okay. Mr. Thompson?

MR. THOMPSON: Yes, Your Honor. We prefer settlement.

THE COURT: Okay. I will recess this hearing. We have two breakout rooms. Are you familiar with that, counsel? As you enter those doors -- or you walk out those doors, on your left and on your right. And then you can use the hallway to talk. My next hearing is at 1:00 -- is at 2:45. It's a -- it's a sentencing. And then my last hearing is at 3:30. That should be over by -- I should be done by 4:15, 4:30.

If you're able to reach an agreement, come let -- you know, we'll go back on the record. We could put a settlement on the record. Otherwise, I -- I'm -- I have what I need to do to make findings.

Would you like to -- so we're all in agreement here?

MS. McMANIS: Yes, Your Honor.

MR. THOMPSON: Yes, Your Honor.

MR. BOLEN: Yes, Your Honor.

THE COURT: Okay. We stand at recess.

If you need to reach me, please come back in. Ms. Richter is my courtroom deputy. She will get ahold of me right away.

(Recess from 1:55 p.m. to 2:21 p.m.)

THE COURT: Ms. McManis.

MS. McMANIS: Yes, Your Honor. I mean, we weren't able to reach -- reach a settlement. We tried various --

various means. We weren't able to have one reached.

If Your Honor would permit, I -- we'd like to put an offer of judgment on the record.

MR. THOMPSON: And we would object to that, Your Honor. Offers of judgment are only filed with the Court when they're accepted, just like any other settlement communications. So we think it's improper to put it on the record.

THE COURT: You could put it on the record, but if you want it to be effective, you have to file something.

MS. McMANIS: Understood. Understood, Your Honor --

THE COURT: Okay.

MS. McMANIS: -- but I guess we would like to put what we're -- IQ Data is able or willing to do for this regard.

THE COURT: Okay.

MS. McMANIS: We'd make an offer of judgment of $1,000 with attorney fees to be determined by the Court in an amount not to exceed, though, $30,000.

THE COURT: Okay. And that's something that you're not willing to agree to?

MR. THOMPSON: No, Your Honor. We are not willing to agree to a cap on our attorney's fees. We think our fees are either reasonable or they're not reasonable. And if the Court is going to be, you know, forced to, unfortunately, have to decide our fees, then we should be entitled to -- to seek them

all, including the fees for preparing the fee motion.

But, otherwise, if there was no limit at fees, we would -- we would certainly be open to it, Your Honor, and we'd --

THE COURT: Okay. But do you --

MR. THOMPSON: -- accept it.

THE COURT: Do you remember when I told you at one point that, you know, it's reasonable fees?

MR. THOMPSON: Yes, Your Honor. And I think $30,000 being reasonable at this point, with the amount of work we've been forced to put in, would -- would not be reasonable.

THE COURT: Okay. All right. So you don't -- you don't think there's any other efforts that could be made today?

MS. McMANIS: We've had several back and forths. I don't believe any additional efforts would be feasible --

THE COURT: Okay.

MS. McMANIS: -- no.

MR. MARTIN: Your Honor, I would just say the offer of judgment and the significant amount that we offered I think, you know, should indicate to the Court our sincere interest in resolving this case. It's been that way from the beginning. We -- we do not seek to, you know, use the Court's resources and, you know, pursue these various motions to the Court. We like to resolve these matters very early in the process. And was were unable to do so in this case for whatever reason.

But, you know, it is our intention and goal to get these cases resolved for a reasonable number at an early stage and not burden the Court and not burden, you know, all of the attorneys to be involved with it.

And so, you know, I hope you'll consider that as you're -- you know, whatever next steps you're taking.

THE COURT: Okay. Well, I'm glad -- I'm glad, Ms. McManis, did tell me that, because -- because I think that is informative.

But -- but will you get that on file in a written -- a written filing?

MS. McMANIS: Yes.

THE COURT: Because I don't want to have to rely on something that's in the record -- or that's -- that's on a transcript.

MS. McMANIS: Yes. Yes, we can.

THE COURT: Okay.

Do you want to say something?

MR. THOMPSON: I just want to make sure that we're not requiring it to be filed as opposed to serving a written offer of judgment.

THE COURT: I'm -- I'm asking her to do whatever she wants to do. If she wants to put it on the file -- on file, she can. I'm -- I'm just warning that, you know, putting it on the record on a transcript that I'm going to have to search,

you know, it's going to get lost, and I don't -- I don't want to have to have that responsibility.

MR. THOMPSON: Sure. I just wanted to make -- make clear that our position is the offer of judgment rule is that it doesn't get filed with the Court unless it's requested.

THE COURT: Okay. Follow --

MR. THOMPSON: I just wanted to make sure that's clear.

THE COURT: Okay. Follow the rule, Ms. McManis. I mean, that's -- I think that's what I was trying to say and that's what he's saying. Okay?

MS. McMANIS: Yes.

THE COURT: All right.

MR. THOMPSON: Your Honor, if I could say something? If you don't mind?

THE COURT: Go ahead.

MR. THOMPSON: So -- so I would just like to say that I -- I would request the Court not be persuaded whatsoever in its decision by the settlement negotiations that just occurred here given that the Court's not aware of all of the settlement negotiations that were had in the hallway.

THE COURT: I -- Mr. Thompson, I don't want to know all this -- all of the information. I'm making a decision based on what has been told to me in the courtroom and what is on file.

MR. THOMPSON: Thank you, Your Honor.

THE COURT: Okay. And so I am going to invite plaintiff to file a motion for attorney's fees on the following matters: I find that the Rule 11 motion was filed for the purpose of leveraging a settlement and to harass plaintiff and his counsel. I find that the Rule 11 motion was frivolous. It was made recklessly and with bad faith. As I stated earlier, Congress enacted the statute provided for a private suit and statutory damages. Defendant's declarations show that the Rule 11 motion was essentially used as an alternative to a dispositive motion to dismiss. The rationale behind its filing, that the threshold to prevail on a motion to dismiss is high and may provide the plaintiff an opportunity to amend the complaint, does not make sense to me, and I feel like the matter should have been more appropriately raised in a motion to dismiss. And that's particularly after I signaled that at the -- at the Court hearing.

I also find that the -- the defendant's reasons for filing -- for refusing plaintiff's request for an extension of time to respond to the summary judgment motion appears to be vexatious and for the purpose of harassment. Defendant has stated that they wish to move this case along, but on the other hand defendant filed its summary judgment motion on the eve of the settlement conference. And this litigation has been dragged on by defendant's conduct. Indeed, this hearing would

not be necessary but for defense counsel's failure to act courteous -- courteously and professionally.

I also find that the defendant's counsel misrepresented its reasons for wanting the modification of the scheduling order to the Court. The defendant's counsel stated that they sought to modify the scheduling order and extend certain deadlines for the -- to increase settlement possibility and to avoid incurring additional fees and costs prior to the upcoming settlement conference. The dis- -- the defendant signaled to the Court that they were going to wrap up the matter -- or attempt to wrap up the matter in a cost-effective way but then only filed a motion for summary judgment, which required further Court action.

I'm going to invite the plaintiff to file a motion for the award of attorney's fees. You can move under the following points of authority, if you wish: The Court's inherent authority, 28, United States Code, Section 1927, and if you think any other rule under the Rules of Civil Procedure, including Rule 37. You'll have to make your case as to why you have authority to obtain fees for those -- for those elements. So it will be just limited to dealing with the Rule 11 motion, dealing with the requests for extension of time to respond to the summary judgment motion. And I feel like that includes this hearing and the motion to modify the Rule 16 scheduling order.

I would like you to file that motion no later than Wednesday, December 21st, 2023 -- pardon me -- 2022. And then defendant will have until Friday, January 13, 2023, to file a response brief. And I've taken into account the holidays.

But, Ms. McManis, if you think you require additional time, I will give you additional time.

MS. McMANIS: I think that schedule works, Your Honor.

THE COURT: All right. Then the plaintiff can file a reply, if he chooses to file a reply, on Friday, January 20th, 2023.

If somebody wants oral argument, I need you to request oral argument in the customary manner. I'm also going to order that all counsel, and that is Mr. Thompson, Ms. McManis, and Ms. Van Vranken, attend the State Bar of Arizona's professional -- professionalism course. And I'd like you to do that before March 31st, 2023. And I need you to file a notice of compliance with the Court showing me that you have complied.

If this case is resolved in plaintiff's favor ultimately and there is a motion for attorney's fees, and if I do award attorney's fees, at the end of the day there will be no double-counting of attorney's fees.

So if -- if we get to that, Mr. Thompson, and you file a motion for attorney's fees, I would expect not to see a claim for fees in duplication of anything I might award you in connection with -- with this event.

Do you -- do you fully understand what I'm saying?

MR. THOMPSON: I 100 percent understand, Your Honor.

THE COURT: Okay. And -- and I want to repeat something to you that I told you earlier, that I -- I feel like the case has been unreasonably litigated. And if you think you're going to get a dollar-for-dollar recovery if you prevail on other matters, you are sorely mistaken.

So, you know, there's a saying that I learned in a prior life. Pigs get fat and hogs get slaughtered. And I hope you're not a hog.

MR. THOMPSON: Can you clarify the first part of that? I'm not sure --

THE COURT: What part?

MR. THOMPSON: -- I -- dollar for dollar.

THE COURT: If I award you attorney's fees pursuant to this order -- and let's pretend, just to pull a round number, it's $5,000 -- if you later prevail in this case on a summary judgment motion or at trial and you seek attorney's fees from me, you are not going to get a double recovery.

MR. THOMPSON: I understand that part, Your Honor.

I'm sorry. It was the next statement before -- something about the dollar-for-dollar recovery. I certainly understand that we're not going to seek --

THE COURT: Right.

MR. THOMPSON: -- the same time twice.

THE COURT: Unless I'm mistaken, as I sit here today -- and you could certainly convince me that I am mistaken. My understanding is, is that your fee recovery, if I were to award it, is a reasonable fee. It's not an actual fee.

MR. THOMPSON: Oh, okay. I agree 100 percent, Your Honor.

THE COURT: Okay.

MR. THOMPSON: I --

THE COURT: So, you know, you come here, you are not fully without blame. Okay? This was something to -- you know, dealing with the defendant and their counsel. So if you -- if you expect me to award you a dollar-for-dollar fee recovery, I will tell you right now you are wrong. You might end up getting less than $30,000. You might up -- end up litigating this case for another six, ten, whatever months, and you -- perhaps maybe all the money you get is based on what I may or may not award you pursuant to your fee application here.

So I -- I hope you fully understand and appreciate that as you walk out of here rejecting the defendant's settlement offer.

Do you?

MR. THOMPSON: I think so. I think the Court is saying that it's only going to award reasonable fees, not all fees necessarily sought or billed, but I -- I'm not sure.

THE COURT: That is what I am telling you now. That

is what I told you to your face in a prior hearing in this courtroom.

MR. THOMPSON: Your Honor, I think I said then, and you know, I'll say it again now, that we only -- we are -- our goal is to only seek our reasonable fees and not to seek any time that's not recoverable. But I -- I certainly understand your -- your -- your warning --

THE COURT: Okay.

MR. THOMPSON: -- and we'll take heed.

THE COURT: Okay. Do you understand what I just told plaintiff's lawyer, Ms. -- Ms. McManis?

MS. McMANIS: Yes, Your Honor.

THE COURT: Okay. Does anybody have any questions about what I just told Mr. Thompson?

MR. THOMPSON: Not about that, but can you repeat the date for the professional course? I didn't catch that deadline.

THE COURT: March 31st, 2023.

MR. THOMPSON: Thank you.

THE COURT: And that's a Friday.

There was a case in these briefs. There's an issue with a defendant's deposition witnesses and -- and a document that -- that was -- am I going to have to resolve that on a discovery dispute?

MR. THOMPSON: Unfortunately, Your Honor, it appears

that way. We sent our portion over to the defendant and are awaiting their response after -- because we've conferred over the phone and via email, and we're unable to resolve it.

THE COURT: Okay. Well, what I'd like you to do is file a three-page notice of discovery dispute. You can attach any correspondence that you feel is useful or helpful to me understanding the -- the basis of the dispute. I feel like it would be helpful for me to review the document in -- in my chambers in camera.

Ms. McManis, can you have that delivered to the Court around the same time that the notice of discovery dispute is filed so I can look at it?

MS. McMANIS: Yes. Can I have just a -- a minute to speak to the client because of how -- how the -- the document dispute is maintained possibly on their -- their system?

THE COURT: Yes.

MS. McMANIS: I just don't want to --

THE COURT: Yes.

(Brief pause.)

MS. McMANIS: Your Honor, the documents in question are kind of like behind-the-scenes issues, screens within the client's system. If -- if it's something that we can submit it to Your Honor in court for in camera review, would we be able to argue or discuss it in camera as well?

I mean, because there's -- we believe it's not just

proprietary information. It's -- the client's advised me it's not even something they give to the regulatory bodies if they were ever needing to give --

THE COURT: Is it --

MS. McMANIS: -- information.

THE COURT: Is it in paper form that I can look at?

MS. McMANIS: I mean, it's currently in electronic form. I mean, I --

THE COURT: Okay.

MS. McMANIS: I believe it could probably be reduced to paper, but it's not even their official documents.

THE COURT: The way I read this dispute in the briefs is it was a piece of paper that the deponent had in front of him or her.

MS. McMANIS: Yeah. There's the two issues, Your Honor. Yes, there is a -- a piece of paper, a -- that the deponent had, and then the other half of the dispute is these screens that the deponent referenced.

THE COURT: Oh, I --

MS. McMANIS: I certainly --

THE COURT: Yes. Okay. I remember that. I'm thinking of the piece of paper.

MS. McMANIS: I mean, yeah. I mean, that's something that, you know, we could, you know, give almost under -- under seal to -- to you, to Your Honor. We just obviously don't want

it to be -- you know, we're arguing that it's privileged information to be disclosed or seen to opposing counsel --

THE COURT: No, I --

MS. McMANIS: -- at this point.

THE COURT: The appropriate way to do it is to provide it to me in camera for me to review, and that way I'll just see it, and then I'll make sure you get it back. And Mr. Thompson or his client won't see it.

MS. McMANIS: Yeah, certainly in regards to that --

THE COURT: Okay.

MS. McMANIS: -- one page of -- yes, that can be provided.

THE COURT: Okay. Then -- then the other issue -- I didn't look at that. I'm aware of it now, but I didn't look at it too carefully. So what I'd like -- I'll give you extra pages. So if you want to consolidate that in the discovery dispute notice, you could have six pages --

MS. McMANIS: Okay.

THE COURT: -- total. And just give me your position. And, frankly, if you need an extra page or two, that's fine with me.

MS. McMANIS: Okay.

THE COURT: Okay.

MS. McMANIS: And then the only document to provide in camera at this time is the one-page document that we're

asserting is --

THE COURT: Yes.

MS. McMANIS: -- privileged?

THE COURT: If you can describe with particularity what these screens are in your motion, I'll make a determination as to whether I need to look at that. And then I suppose we -- we can all visit -- re- -- you know, we could all meet and visit and figure out how to do that. Okay?

MS. McMANIS: Yes, Your Honor.

The one other pending discovery issue, if -- if I can bring it up --

THE COURT: Yes.

MS. McMANIS: -- at this time? I mean it was kind of alluded to, I believe, in Mr. Thompson's response.

You know, the close of discovery is tomorrow. We were going to issue some subpoenas based on information learned during the deposition. So it could be issued by tomorrow, but they wouldn't be coming -- coming back within the Court's 45-day time to issue it prior to the close of discovery.

Is that something that can be -- be briefed if -- if needed at that time as well?

THE COURT: When were the depositions?

MS. McMANIS: November 3rd and 4th, I believe -- or 4th and 5th. No 3rd --

MS. VAN VRANKEN: 3rd.

MS. McMANIS: 3rd and 4th.

THE COURT: Confer with Mr. Thompson and file something.

MS. McMANIS: Okay. All right.

THE COURT: Okay?

MS. McMANIS: Yes, Your Honor.

THE COURT: Does anybody have anything else?

MR. THOMPSON: No, Your Honor.

THE COURT: Okay.

Court is adjourned.

(Proceedings conclude at 2:43 p.m.)

---oOo---

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 6th day of December, 2022.

s/Cathy J. Taylor
Cathy J. Taylor, RMR, CRR, CRC