**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ryan Six, | No. CV-22-00203-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| IQ Data International Incorporated, | |
| Defendant. | |

Unwanted mail is a fact of modern life—something this Court previously observed. Here we are again because of one such letter. Now, the dispute is not over the effects of the letter itself, but the timeline and backdrop regarding its delivery.

Before the Court are Plaintiff Ryan Six's Motion for Summary Judgment (Doc. 154) and Defendant IQ Data International's Motion for Summary Judgment (Doc. 155). Because genuine disputes of material fact remain, the Court will grant in part and deny in part Plaintiff's motion and deny Defendant's.

**I.    BACKGROUND**

Six sues IQ Data, alleging that the company violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending him a collection letter after he informed IQ Data of his representation by counsel. A debt obligation was imposed on Six based on an allegedly unpaid invoice for Six's breach of a residential lease. (Docs. 1 ¶ 9; 154-1 at 27.) In June 2017, the debt obligation was placed with IQ Data, a professional collection agency providing services to the residential apartment industry. (Doc. 155

at 5-6.)

On August 18, 2021, Six mailed a dispute letter to Equifax claiming that he had no recollection of the debt account and requesting documentation verifying the debt account information. (Docs. 154-1 at 20; 159-1 at 11.) On that same day, Six's prior counsel mailed a letter to IQ Data. The letter advised IQ Data that Six retained counsel in connection with the subject debt and directed IQ Data to send all communication related to the subject debt to counsel. (Docs. 154-1 at 32; 155 at 3.) IQ Data's compliance department stamped the attorney representation letter as received on August 30, 2021. (Doc. 154-1 at 32-34.)

On September 2, 2021, IQ Data, having received and processed the dispute letter forwarded from Equifax, submitted a system request to generate and send a letter providing documentation and notice of the debt to Six's updated address. (Docs. 154 at 4-5; 155 at 6-7.) The next day, IQ Data updated its records to reflect that it had processed the letter from counsel, that Six was represented by counsel, and that there should not be any direct communication with Six. (*Id.*) On that same day, however, IQ Data's collection letter providing documentation and re-issuing notice of the debt was sent to Six's updated mailing address. (*Id.*) Six alleges that this communication violates 15 U.S.C. § 1692c(a)(2) because IQ Data contacted him directly despite knowledge of his representation. (Doc. 1 ¶¶ 21-22.)

Now comes the procedural history. On May 18, 2023, the Court dismissed Six's complaint for lack of Article III standing and denied as moot IQ Data's Motion for Summary Judgment (Doc. 62), Six's Motion to Strike Expert Disclosure or Exclude Expert (Doc. 68), and Six's Motion for Summary Judgment (Doc. 112). (Doc. 128.) On February 24, 2025, the Ninth Circuit reversed the dismissal and remanded for further proceedings. *See Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 635 (9th Cir.), *cert. denied*, 146 S. Ct. 120 (2025). IQ Data then filed a petition for a writ of certiorari, which the Supreme Court denied on October 6, 2025. (Docs. 142, 146.)

Following remand, the parties refiled their cross motions for summary judgment (Docs. 154, 155), and Six refiled his motion to strike IQ Data's expert (Doc. 153). The

Court has since denied the motion to strike (Doc. 167), and the renewed cross motions for summary judgment are now ripe for review.

## II.      LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

Where, as here, the "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal quotations omitted). The summary judgment standard operates differently depending on whether the moving or non-moving party has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the movant bears the burden of proof on a claim at trial, the movant "must establish beyond controversy every essential element" of the claim based on the undisputed material facts to be entitled to summary judgment. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation modified). If the movant fails to make this showing, summary judgment is inappropriate, even if the non-moving party has not introduced contradictory evidence in response. *See id.* When, on the other hand, the non-movant bears the burden of proof on a claim at trial, the movant may prevail either by citing evidence negating an essential element of the non-movant's claim or by showing that the non-movant's proffered evidence is insufficient to establish an essential

element of the non-movant's claim. *See Celotex*, 477 U.S. at 322-23.

### III.    DISCUSSION

Six moves for summary judgment on his claim under 15 U.S.C. § 1692c(a)(2), alleging that IQ Data violated the statute by attempting to collect the debt directly from him despite knowledge that he was represented by counsel. (Doc. 154 at 2.) Six also seeks summary judgment on all of IQ Data's affirmative defenses, including its bona fide error defense. (*Id.* at 5.)

IQ Data likewise moves for summary judgment, arguing primarily that any alleged violation is excused by the bona fide error defense. (Doc. 155 at 4.) IQ Data also requests an award of attorneys' fees and costs, asserting that Six filed this action in bad faith and for the purpose of harassment. (*Id.* at 5.)

The parties' cross-motions present two principal questions. First, whether Six has established as a matter of law that IQ Data violated 15 U.S.C. § 1692c(a)(2), an issue on which Six bears the burden of proof at trial. Second, if a violation occurred, whether IQ Data has established the bona fide error defense under 15 U.S.C. § 1692k(c), on which it bears the burden of proof at trial. *See Reichert v. National Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008).

### A.    FDCPA Liability: Violation Under 15 U.S.C. § 1692c(a)(2)

The FDCPA prohibits debt collectors from engaging in unfair and abusive practices and creates a private right of action to enforce its provisions. *Rotkiske v. Klemm*, 589 U.S. 8, 9-10 (2019). To establish a FDCPA claim, a plaintiff must show that (1) the plaintiff is a consumer, (2) the debt arises out of a personal transaction, (3) the defendant is a debt collector, and (4) the defendant violated one of the provisions of the FDCPA. *Inserra v. Pinnacle Servs. Inc.*, No. 3:22-CV-00300-CLB, 2023 WL 3342609, at *5 (D. Nev. May 10, 2023). The parties do not dispute that Six is a "consumer" and that IQ Data is a "debt collector." (Doc. 154 at 3.) Thus, the FDCPA applies.

The parties both move for summary judgment on IQ Data's alleged FDCPA violation of 15 U.S.C. § 1692c(a)(2). (Docs. 154 at 2-5; 155 at 12-13.) Section 1692c(a)(2)

provides:

> (a) . . . [A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . (2) if [it] **knows** the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2) (emphasis added).

A primary requirement here is that the debt collector must have "actual knowledge" that the consumer is represented by an attorney regarding the debt at issue. *See Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 992 (D. Ariz. 2010) ("Under § 1692c(a)(2) of the FDCPA, the 'knowledge' requirement means that a debt collector must possess 'actual knowledge' that the debtor was represented by an attorney."); *Woodman v. Medicredit, Inc.*, No. 2:22-CV-1210 JCM (BNW), 2024 WL 4132732, at *3 (D. Nev. Sep. 9, 2024) ("Courts generally interpret the knowledge requirement in 15 U.S.C. § 1692c(a)(2) to require that a debt collector have 'actual knowledge' of attorney representation with respect to the specific debts.").

The undisputed facts show that Six's former counsel mailed a letter via certified mail to IQ Data on August 18, 2021. (Doc. 154-1 at 32-34.) That letter was stamped received by IQ Data's compliance department on August 30, 2021. (*Id.*) IQ Data nevertheless mailed a letter directly to Six regarding the debt on September 3, 2021. (Doc. 155 at 3.) IQ Data relies on its work-card entries to show that the attorney letter was not processed in the account before the September 3 mailing. (Doc. 159-1 at 7 ¶ 35.) The work card reflects that IQ Data logged Six's dispute letter on September 1, requested its vendor on September 2 to send a letter directly to Six, and on September 3 reviewed the attorney letter and modified the account accordingly. (*Id.* at 17.) IQ Data also submits an affidavit from its Vice President, Michael Gulbranson, attesting that it lacked "actual knowledge" of Six's representation at the time the letter was generated. (*Id.* at 6 ¶ 22.)

The question is whether IQ Data's receipt of certified mail from Six's counsel

- 5 -

establishes that it knew Six was represented by an attorney with respect to the debt before it mailed the September 3 letter directly to him. Six argues that receipt of certified mail constitutes "actual notice" of the letter. (Doc. 154 at 3 (citing *Isham*, 738 F. Supp. 2d at 993).) In *Isham*, the court held that "[a]s a matter of law," a signed certified mail receipt "implies" that the debt collector had "actual notice that it received the letter" and that it was "immaterial" whether the employee assigned to the account was aware of the letter due to alleged mishandling of office mail. 738 F. Supp. 2d at 993.

IQ Data argues that *Isham* is distinguishable because, in that case, the debt collector had notice through multiple channels, not solely through the certified mail receipt. (Doc. 159 at 6.) The Court agrees with IQ Data that *Isham* does not stand for the proposition that receipt of certified mail, standing alone, resolves the knowledge inquiry in every case. In *Isham*, the record also included additional evidence of knowledge, including internal account coding reflecting attorney representation prior to the violative communications. 738 F. Supp. 2d at 993.

Here, the record presents competing evidence. The certified mail receipt and intake stamp support an inference that IQ Data had actual notice of counsel's letter before sending the September 3 communication. *See id.* (holding that a certified mail receipt can imply notice in the FDCPA context). However, IQ Data's work-card entries and supporting testimony indicate that the attorney letter had not yet been processed or entered into the account at the time the communication was generated, and that the employees involved did not subjectively know of the representation. *See Six*, 129 F.4th at 636 n.4 ("[T]he minimal amount of time between IQ's processing of the letter from Six's attorney's and IQ's mailing of the disputed letter, coupled with the fact that Six asked IQ for information to be sent to him, raises serious questions about IQ's liability.").

This conflict goes directly to the knowledge requirement under § 1692c(a)(2). *See Woodman*, 2024 WL 4132732, at *3. Because a reasonable jury could credit either the inference arising from the certified mail receipt or IQ Data's evidence regarding the timing and internal processing of the letter, there is a genuine dispute of material fact as to whether

IQ Data had actual knowledge of Six's representation at the time of the September 3 communication. *See Gostony v. Diem Corp.*, 320 F. Supp. 2d 932, 942 (D. Ariz. 2003) (addressing a different FDCPA provision but denying summary judgment where factual disputes regarding the debt collector's knowledge remained).

The Court therefore finds summary judgment inappropriate for both parties on the issue of FDCPA liability.

### B.    Bona Fide Error Affirmative Defense

Because the parties have fully briefed IQ Data's bona fide error defense, the Court addresses that issue in the alternative. While the FDCPA makes debt collectors liable for violations that are not knowing or intentional, it provides a "narrow exception to strict liability," for bona fide errors. *Reichert*, 531 F.3d at 1005 (citation omitted). The statute enumerating the bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof. *Reichert*, 531 F.3d at 1006. Altogether, the bona fide error defense requires a showing that the debt collector: "(1) violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid the violation." *Urbina v. Nat'l Bus. Factors, Inc.*, 979 F.3d 758, 763 (9th Cir. 2020).

At issue here is the third prong. The Ninth Circuit applies a two-step inquiry to determine whether the "procedures" prong is met in any given case. *Reichert*, 531 F.3d at 1006. First, the debt collector must show that it actually maintained procedures to avoid errors. *Id.* Second, the procedures must be "reasonably adapted to avoid the *specific error* at issue." *Id.* (citation modified). Whether procedures are reasonably adapted is a

"fact-intensive question," and thus often inappropriate for resolution on summary judgment. *See id.* (quoting *Wilhelm v. Credico Inc.,* 519 F.3d 416, 421 (8th Cir. 2008)). Although the FDCPA does not require every conceivable precaution, it does require more than a general assertion of compliance. *Isham*, 738 F. Supp. 2d at 999. The defendant must explain how its procedures address the particular error that occurred. *Id.*

IQ Data points to three categories of procedures: (1) policies governing communications with represented consumers, (2) policies governing incoming mail processing, and (3) employee training on those policies. (Doc. 155 at 14.) IQ Data's policy respecting communications with represented consumers provides that once it learns that a consumer is represented, employees must input an action code to prevent further direct communication. (Doc. 158-1 at 93-94.) As to mail processing, the relevant policy requires that incoming correspondence be date-stamped, sorted, and routed to the appropriate department for processing. (*Id.* at 75-76.)

While those procedures exist, the relevant question is whether those procedures were reasonably adapted to prevent the specific error at issue here, namely, the failure to timely process and act on a letter notifying IQ Data that Six was represented by counsel before sending a collection letter directly to him. On that question, the evidence cuts both ways.

On one hand, IQ Data's policies require that once representation is known, the account be coded to prevent direct communication, and its mail-handling procedures contemplate that incoming correspondence will be reviewed and routed for appropriate action. (Doc. 158-1 at 75-76, 93-94.) IQ Data also presents testimony that its employees followed these procedures in this case. (*Id.* at 42-46.) Mr. Gulbranson's affidavit provides that "IQ Data employees retrieve mail from IQ Data's P.O Box every day, and such mail is then sorted, distributed, and processed in a timely manner." (Doc. 159-1 at 6-7 ¶ 28.) It also states that employees retrieve, sort, and process mail daily and are trained to update accounts to reflect attorney representation by applying the appropriate coding. (*Id.* at 7 ¶¶ 29, 31.) From this evidence, a reasonable juror could conclude that IQ Data maintained

procedures reasonably adapted to avoid the error and that the September 3 letter resulted from an isolated lapse in timing rather than a systemic deficiency. *See Six*, 129 F.4th at 636 n.4 (noting that, on these facts, "serious questions about IQ's liability" exist given the timeline between the letters).

On the other hand, Six identifies evidence from which a reasonable juror could find those procedures inadequate in practice. Here, the alleged breakdown occurred at the front end of the mail-handling process, between receipt of the attorney letter and the entry of that information into IQ Data's system. The record reflects that IQ Data does not require incoming mail to be processed within any specified timeframe. (Doc. 158-1 at 29-30, 75-76.) And it does not require that an account be updated within a certain period after receipt of correspondence indicating attorney representation. (*Id.* at 31-32, 93-94.) A reasonable juror could find that, without such safeguards, IQ Data's procedures were not reasonably adapted to prevent the type of delay that occurred here. *See Isham*, 738 F. Supp. 2d at 999-1000 (finding procedures insufficient where they failed to ensure proper handling and tracking of incoming consumer mail). Six also points to evidence that training practices were not uniform, undermining IQ Data's assertion of consistent implementation of its procedures. (Doc. 158 at 14 (citing Doc. 158-1 at 14-17).)

For these reasons, IQ Data has not established the procedures prong as a matter of law, and Six has not shown the absence of a genuine dispute of material fact. *See Anderson*, 477 U.S. at 248. Summary judgment is therefore inappropriate for both parties on the bona fide error defense, and the Court need not analyze the remaining prongs.

### C.    IQ Data's Remaining Affirmative Defenses

In addition to the bona fide error defense, IQ Data raises the following affirmative defenses in its Answer: (1) failure to state a claim, (2) no damages, (3) estoppel, (4) reservation of rights, (5) damages offset, and (6) no standing. (Doc. 12 ¶¶ 25-34.) The Ninth Circuit has since determined that Six has standing to pursue this claim. *See Six*, 129 F.4th at 635. IQ Data has also withdrawn its damages-offset defense. (Doc. 80.) Although IQ Data addresses its bona fide error defense in its summary judgment briefing, it does not

respond to Six's motion as to the remaining defenses. (*See* Doc. 154 at 5; *see generally* Doc. 159.) Accordingly, IQ Data has abandoned those defenses. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). The Court will therefore grant summary judgment in favor of Six and against IQ Data on the following affirmative defenses: failure to state a claim, no damages, estoppel, and reservation of rights.

**IT IS THEREFORE ORDERED granting in part and denying in part** Plaintiff Ryan Six's Motion for Summary Judgment (Doc. 154). The Court grants summary judgment in favor of Plaintiff and against Defendant on the following affirmative defenses: failure to state a claim, no damages, estoppel, and reservation of rights. Summary judgment is denied in all other respects.

**IT IS FURTHER ORDERED denying** Defendant IQ Data's Motion for Summary Judgment (Doc. 155).

Dated this 31st day of March, 2026.

Michael T. Liburdi
United States District Judge